IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:02CR382 |
| vs. | |
| ANGEL VELAZQUEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the request of the defendant seeking compassionate release. Filing No. 188. The Defendant seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) as amended by Section 603 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The public defender's office filed the motion for compassionate release. Filing No. 188. The Court requested that the United States Probation Office review the plan of home detention and file an investigative report with prison medical records. The Court also requested the government file a responsive brief to the motion for compassionate release. Filing No. 193. Both the government and the probation office have complied with the Court's order. Filing Nos. 196, 197, and 202. Defendant requests that this Court reduce his sentence to time served. The probation office has filed the investigation report indicating that the suggested home confinement is acceptable, if the Court chooses to grant the motion for compassionate release. Filing No. 196 at 8.

A jury found Mr. Velazquez guilty on March 11, 2004 of 1) conspiracy to distribute methamphetamine; 2) possession of a short barreled shotgun in furtherance of a drug conspiracy; 3) felon in possession of a firearm; and 4-7) possession with intent to distribute methamphetamine. He filed a Motion for Judgment of Acquittal, which was

1

overruled as to all counts except Count 2, which was taken under advisement. The defendant's base offense level was 38, and he received a two-level increase for obstruction of justice, for a total of 40. He was found to be a career offender [CHC VI], and because he was convicted of 18 U.S.C. § 924(c), under USSG § 4B1.1(c)(2)(A), his guideline imprisonment range was 480 months to life on all counts. Mr. Velazquez was sentenced on June 16, 2005, to terms of as follows: 1) life; 3) 10 years; and 4-7) 20 years, all concurrent. He was sentenced to supervised release terms as follows: 1) 10 years; 3) 3 years; and 4-7) 6 years, all concurrent. The Motion for Acquittal with respect to Count 2 was granted, and the charge was dismissed. His calculated release date is Life. According to the Judgment and Commitment and the SOR filed in the instant offense, "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life based on the Information filed pursuant to 21 U.S.C. § 851 to establish prior convictions, 360 months for Count I of the Second Superseding Indictment, 10 years for Count III, and 20 years for each of Counts IV, V, VI and VII of the Second Superseding Indictment, all to run concurrently. Defendant shall not be given credit for time served. Defendant shall serve his time concurrent to any time imposed by the State of Nebraska."

Defendant has a history of criminal activity beginning in 1991. This conviction is his 6th felony. Some of these convictions were committed during his short stint while not incarcerated from 1999 to 2002. His convictions include drug violations, distribution of controlled substances, felony sexual assault of a child, providing a young girl with drugs, felon in possession of a firearm and conspiracy to conspire with an undercover officer for the murder of an investigator regarding the offense in this case. Defendant provided the funds and shells and paid some amount of money up front for the murder. His state

sentence was 16 to 20 years in prison.  He was arrested after a four-hour standoff at his home.  At this time, he has served 6 years and 4 months of his federal sentence.  The probation officer notes that the guideline range is 360 to life, with U.S.S.G. § 4B1.1(c)(2)(A) providing for a guideline range of 480 months to life.  Filing No. 104, PSR ¶ 50, 90.

**DISCUSSION**

The First Step Act amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration.  Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019).  Congress designed the provision at issue here, 18 U.S.C. § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release."  § 603(b), 132 Stat. at 5239.  Section 3582(c)(1)(A) allows defendants, for the first time, to petition district courts directly for compassionate release.  *Id.*  Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early.  § 3582(c)(1)(A)(i).  Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a defendant may (after exhausting his or her administrative remedies) move for reduction of his or her term of imprisonment based upon "extraordinary and compelling reasons."  The Court, after considering the factors enumerated in 18 U.S.C. § 3553(a)[1], may grant the motion if extraordinary and

---

[1] The statute states: (1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2] Accordingly, an initial review of the defendant's claim will involve these inquiries:

1. Has the defendant exhausted administrative remedies?

2. Has the defendant identified extraordinary and compelling reasons for reducing his or her term of imprisonment?

3. Would application of the § 3553(a) factors permit reducing the defendant's sentence if those extraordinary and compelling reasons were substantiated?

4. Ensure that any reduction is consistent with applicable policy statements.

18 U.S.C. § 3582(c)(1)(A).

Already "tinderboxes for infectious disease," prisons now are even more dangerous than we typically accept. *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). The Attorney General has directed the BOP to consider increased use of home confinement for at-risk inmates. Memorandum from U.S. Att'y Gen. William Barr to Dir. of Bureau of Prisons (Mar. 26, 2020).

*A. Exhaustion*

The Court finds that the defendant has met the exhaustion requirement. *See United States v. Brown*, 2020 WL 2091802, at *5 (S.D. Ia. Apr. 29, 2020) ("Defendant

---

(i) extraordinary and compelling reasons warrant such a reduction; . . .
***** and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

satisfied the exhaustion requirement's text and purpose [when] [h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court."). Defendant filed such a request with the BOP and 30 days have elapsed.

### B. Medical Vulnerability

Next, the Court finds that defendant's physical and medical vulnerability to COVID-19 are arguably extraordinary or a compelling reason for a change in defendant's sentence.[2] *See* e.g., U.S.S.G. § 1B1.13 comment. n.1(A)-(C). As Judge Gerrard observed in *Jenkins,* there is currently "no 'applicable' policy statement cabining the Court's discretion to act under § 3582(c)(1)(A)." *United States v. Jenkins*, 2020 WL 2814437, at *3 (D. Neb. May 26, 2020); *see also United States v. Redd*, 2020 WL 1248493, at *5 ( E.D. Va. March 16, 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (canvassing cases and holding that courts, rather than the outdated policy statements, should determine whether a defendant qualifies for compassionate release); *United States v. Beck*, 425 F. Supp.2d 573, 579 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

COVID-19 is clearly a global pandemic that presents extraordinary and compelling release for certain prisoners. It is unprecedented. COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a

---

[2] *See* defendant's medical records at Filing No. 197.

compromised immune system, obesity, heart disease, hypertension, chronic lung disease, diabetes mellitus, and asthma. Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention (April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Mr. Velazquez attempted suicide while in jail in the early 2000's. He is in mental health counseling and takes drugs for this condition. He shows no functional impairment for these health conditions, according to the Bureau of Prisons. In 2004, he had four back surgeries and a shoulder surgery. He received Social Security benefits for the back injury and disabilities prior to entering prison. He has Type II diabetes and takes medication for the same. He takes medication for hypertension. He takes medication for pain associated with his back, discs, and related orthopedic rheumatology. He has high cholesterol and takes medication for the same. He has edema and wears compression socks and uses a cane. He has vision problems and is obese. The records are confusing at best, but it appears he may have tested positive for COVID-19 in November of 2020, although he presented asymptomatic.

The combination of these medical conditions makes the defendant a high risk for COVID-19 infection. He is also as risk for stroke, heart attack, and infection.

According to the BOP website, https://www.bop.gov/coronavirus/, there are approximately 1,190 inmates at this facility. As of June 22, 2021, there are currently no active cases of coronavirus among inmates or staff at FCI Greenville, with 675 current inmates recovered, 78 staff recovered, and 0 inmate deaths. Overall, "The BOP has 129,326 federal inmates in BOP-managed institutions and 13,814 in community-based facilities. The BOP staff complement is approximately 36,000. There are 74 federal

inmates and 131 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 44,528 inmates and 6,873 staff have recovered. There have been 240 federal inmate deaths and 4 BOP staff member deaths attributed to COVID-19 disease. Of the inmate deaths, 5 occurred while on home confinement." *See* Federal Bureau of Prisons, COVID-19 Cases, at https://www.bop.gov/coronavirus/ (last checked June 22, 2021). The BOP also reports 115,362 completed tests, 333 pending results, and 43,983 positive results. There have been 196,260 doses of the vaccine administered. FCI Greenville reports 153 staff and 797 inmates vaccinated. By the Court's calculation this is an inmate vaccination rate of 67%. The Court is not informed concerning the defendant's vaccination status. The Court finds the medical evidence establishes that Velazquez is at significantly higher risk for COVID-19 complications and is in generally poor health.

### C. Section 3553(a) Factors

Finally, the Court must consider if compassionate release comports with any applicable § 3553(a) factors. *See also* § 3582(c)(1)(A). When reviewing the § 3553(a) relevant factors, the balance of those factors supports a sentence of home confinement. The Court has already established that Velazquez's health conditions place him at heightened risk for severe illness from COVID-19.

Defendant is 63 years old. As stated in the investigative report, he has completed training courses and has minor disciplinary infractions.[3] According to BOP records, Mr.

---

[3] "BOP records indicate that the defendant completed a drug education course and obtained his GED in 2015 [the PSR indicates he was already a 1975 high school graduate upon entering prison]. Nebraska Department of Corrections records indicate that his intellectual functioning is in the low-average range of intelligence. Between August 2020 and October 2020, he completed the following BOP courses: managing credit; general job search; interview process; how to market self; where to locate jobs; values and goals; getting right with taxes; general math; anger management; and financial response-ongoing. Other than his GED, there is no history of educational course completion or work training prior to 2020. His ongoing recommended assignments and/or needs are designated as:

Velazquez is a minimum recidivism risk level, and his security classification is medium.

Mr. Velazquez seems to have an acceptable place of home confinement.  He would stay with his girlfriend.  The probation officer conducted an in-home inspection and believes the proposed release plan and residence is acceptable.

The government argues that Mr. Velazquez is a danger to the community and should not be released.  The government contends that Mr. Velazquez is basically asking the Court to reexamine his initial sentence.  The Court agrees with the government that the Compassionate Release statute does not contemplate a re-evaluation of the severity of the original sentence, and the Court will not do so.

The Court will grant the motion for compassionate release.  First, the Court agrees that defendant is at substantial increased medical risk for COVID-19 and resulting illnesses.  However, given the low number of COVID-19 infected inmates and staff and the 67% inmate vaccination rate, his risk does not rise to the level of an extraordinary medical situation.  The defendant's medical condition is, however, very perilous.  Second, the Court agrees that the record is unclear if Velazquez has already had COVID-19.  Third, he has taken a number of classes while in prison, and he has not been in any significant trouble while in prison.  Lastly, he has what appears to be a stable environment in which to live if released.

---

anger/hostility, cognition's, financial/poverty, medical, fitness, work ed. At the time of his incarceration in 2004, the defendant had been unemployed for two years [2002-2004]. In the BOP, he is approved for regular duty with medical restrictions, and cleared for food service, but his present work detail is unassigned. His last work detail was as a housing unit orderly from 2017/2018, weekday crew 2016/2017, and FIC admission and orientation program 2015/2016. He is not enrolled in any BOP employment skills training programs presently, nor has he completed any vocational or job training in the BOP, other than the aforementioned courses. Records further indicate that, at this time, he does not have a photo ID, Social Security card, or birth certificate on file at the BOP.
According to Krystal Holston, the defendant told her that he works in a janitorial position in the BOP, but sentry records provided to the probation office did not indicate this. Ms. Holston believes he completed multiple courses, treatment, and programming while in the Department of Corrections-Tecumseh.
BOP Recorded Disciplinary Action: 2016-sanctioned for refusing work/program assignment, and lost privilege for 14 days; and 2016-refusing to obey an order, and lost commissary for 7 days." Filing No. 196 at 5.

The Court does not deem him a danger to the community. Despite his significant criminal history, the BOP has placed him in the low-risk category for recidivism, and it appears he will not be returning to the same area where he previously committed crimes. He is substantially debilitated beyond his chronologic age. Additionally, he would be living under Court supervision in a stable home. He has been incarcerated since August 21, 2002 when he was arrested for attempted murder of a police officer and the drug offenses for which he is currently imprisoned. He completed his state-imposed sentence of 16-25 years on August 17, 2016. Only one of his five co-defendants was prosecuted in Federal Court. The federally prosecuted codefendant was originally sentenced to 117 months, later reduced to 36 months per Rule 35.

The Court finds that indefinite home confinement will serve the purposes of the 18 U.S.C. § 3553(a) factors and the requirements of the First Step Act of 2018.

THEREFORE, IT IS ORDERED THAT for the reasons stated herein, defendant's Motion for Compassionate release, Filing No. 188, is granted.

Dated this 26th day of July, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge